James CHAFFIN, Petitioner-Appellant,

v.

Leroy STYNCHCOMBE, Sheriff of Fulton County, Respondent-Appellee.

No. 71-2016.

United States Court of Appeals,
Fifth Circuit.

Feb. 8, 1972.

Rehearing Denied Feb. 29, 1972.

Glenn Zell, Atlanta, Ga. (Court-appointed), for petitioner-appellant.

Joel M. Feldman, Asst. Dist. Atty., Atlanta, Ga., for respondent-appellee; Lewis R. Slaton, Dist. Atty., Atlanta Judicial Circuit, Amber W. Anderson, Asst. Dist. Atty., of counsel.

Before GEWIN, GOLDBERG and DYER, Circuit Judges.

GEWIN, Circuit Judge:

This case brings into focus obliquely the importance and weight to be accorded (a) conceptual abstractions as to crime and punishment, (b) principles which should govern the sound administration of justice in criminal cases, and (c) the societal interest in dealing fairly and effectively with those whose guilt is clearly established after being afforded a second trial following an appeal or postconviction proceeding in which a new trial was sought and granted.[1] We do not discuss these concepts separately or in detail. They underlie our consideration of the case at hand.

James Chaffin was convicted of the offense of robbery by open force and violence in a Georgia state court. In accordance with Georgia law [2] the jury

---

1. See United States v. Tateo, 377 U.S. 463, 84 S.Ct. 1587, 12 L.Ed.2d 448 (1964); North Carolina v. Pearce, 395 U.S. 711, 721 n. 18, 89 S.Ct. 2072, 2079 n. 18, 23 L.Ed.2d 656, 667 n. 18 (1969).

2. Ga.Code Ann. § 26-2502:
   Robbery by open force or violence shall be punished by death, unless the jury recommends mercy, in which event punishment shall be imprisonment in the penitentiary for life: Provided, however, the jury in all cases may recommend that the defendant be imprisoned in the penitentiary for not less than four years nor longer than 20 years, in the discretion of the court.

fixed the punishment at 15 years imprisonment. His conviction was affirmed by the Georgia Supreme Court.[3] Thereafter he applied to the United States District Court for a writ of habeas corpus. The district court granted relief and ordered that Chaffin be retried. Upon retrial the jury again found him guilty and recommended mercy. Georgia law mandates that punishment under such a verdict shall be life imprisonment [4] and Chaffin was so sentenced. The Georgia Supreme Court again affirmed his conviction.[5] The record and the assertions of counsel for both parties during oral argument and in their briefs clearly indicate that the second trial was conducted by a different judge, before an entirely new jury, and with a different defense lawyer. A new defense was interposed and additional witnesses were called by both the state and the defense.

After his second trial Chaffin filed a petition for the writ of habeas corpus which was denied by the United States District Court. It is from the district court's order denying relief that Chaffin appeals. The sole issue [6] presented on this appeal is whether the harsher sentence imposed by the jury on retrial violates constitutional principles. We hold that it does not and affirm.

Chaffin urgently contends that an increased sentence constitutes a per se violation of the double jeopardy provisions of the fifth amendment and the equal protection and due process clauses of the fourteenth amendment.[7] We begin by noting that the United States Supreme Court over 50 years ago in Stroud v. United States [8] held there was no per se constitutional prohibition against imposing an increased sentence upon retrial.

More recently in North Carolina v. Pearce [9] the Court explicitly rejected

---

3. Chaffin v. State, 225 Ga. 602, 170 S.E. 2d 426 (1969).

4. See note 2 *supra.*

5. Chaffin v. State, 227 Ga. 327, 180 S.E. 2d 741 (1971).

6. After oral argument Chaffin, acting pro se, filed several letters with this court apparently seeking to raise a claim of ineffective assistance of counsel. The claim was not presented to the district court and there is nothing in the record to indicate that the state courts have been given the opportunity to consider it.

   In addition to the brief filed by his appointed counsel, Chaffin filed a "supplemental brief" which he prepared himself. In his brief Chaffin contends that his original conviction was on a charge of "robbery by hands" and not robbery by force. If this were so the issue would be raised of a conviction upon retrial of an offense greater than that for which he was originally tried. Neither of the preceding contentions were presented either to the district or to the state courts. We therefore do not consider these matters on this appeal. Watkins v. Wilson, 408 F.2d 351 (9th Cir. 1969); *see,* Dryden v. United States, 403 F.2d 1008 (5th Cir. 1968). *See also* Jones v. Vineyard, 438 F.2d 1231 (5th Cir. 1971).

7. Chaffin also suggests that if a jury is permitted to increase the sentence on a retrial a defendant would be forced either to waive a jury trial in the second trial or to plead guilty so that the trial judge could not increase the sentence. He claims this to be a violation of his sixth amendment right to a jury trial. There is no merit to this claim. The jury might decrease his sentence and the trial judge, giving full consideration to the principles set forth in North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), might increase it. Furthermore, in Brady v. United States, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970), the Supreme Court rejected what we consider to be a substantially similar argument. In *Brady* it was argued that the threat of a more severe punishment if the defendant chose to be tried by a jury coerced him to plead guilty in violation of the Fifth Amendment. The Court held that to be a constitutionally permissible dilemma.

8. 251 U.S. 15, 40 S.Ct. 50, 64 L.Ed. 103 (1919).

9. 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). The Court's most recent decision on the question of increased sentences is of no assistance in the case sub judice. In North Carolina v. Rice, 404 U.S. 244, 92 S.Ct. 402, 30 L.Ed.2d 413 (1971) the Court had before it the question whether *Pearce* applied to an increased sentence imposed upon a trial de novo in a North Carolina Superior Court after an initial trial in a lower court.

double jeopardy and equal protection principles as grounds for precluding a harsher sentence upon retrial.[10] The Court did, however, recognize a narrow circumstance in which due process may bar an increase in sentence. In *Pearce* upon retrial following an appeal the trial judge had increased the sentence which he had imposed after the first trial. The Supreme Court found no reasons or justifications in the record for the increased sentence. In such a case the Court said there is a possibility of vindictiveness on the part of the sentencing judge, and that such vindictiveness might "unconstitutionally deter a defendant's exercise of the right to appeal or collaterally attack his first conviction."[11] The Court held that due process requires that a defendant be freed of the apprehension of a retaliatory motive on the part of the trial judge. To ensure due process the Court established the requirement that "whenever a *judge* imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear." [12] As a further requirement the Court added that the reasons must be based upon "objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding."[13]

The Court was concerned with the elimination of the possibility of vindictiveness as a threat to a defendant weighing the merits and the advisability of seeking post conviction relief. There was no denunciation of increased sentences as such. *Moon v. Maryland*,[14] where the writ of certiorari was dismissed as being improvidently granted, strengthens this interpretation of *Pearce*. In *Moon* the Court granted the writ to consider the retroactivity of *Pearce*. Subsequently, the sentencing judge in the second trial filed an affidavit setting forth valid reasons for the increased sentence. But more importantly the Court found conclusively that vindictiveness played no part in the imposition of an increased sentence. In dismissing the writ, the Court said:

But the dispositive development is that counsel for the petitioner has now made clear that there is no claim in this case that the due process standard of Pearce was violated. As counsel forthrightly stated in the course of oral argument, "I have never contended that Judge Pugh was vindictive."[15]

The Fourth Circuit held that *Pearce* was applicable since it required that reasons be given if a sentence is increased and in *Rice* the record revealed nothing which warranted an increased sentence. Although the defendant had been discharged from prison before the case reached the court of appeals, the Fourth Circuit rejected the state's claim of mootness since according to the court there were certain rights and privileges to be regained by having a conviction expunged. The Supreme Court refused to decide the case on the merits. The Court pointed out that *Pearce* requires only resentencing and did not *ipso facto* require that the conviction be set aside. Thus, since there was no evidence whether Rice would reap any benefits merely from a reduction in a sentence already served, the Court vacated the judgment of the court of appeals and remanded the case to that court for reconsideration of the question of mootness.

10. We hold, therefore that neither the double jeopardy provision nor the Equal Protection Clause imposes an absolute bar to a more severe sentence upon reconviction.
395 U.S., at 723, 89 S.Ct., at 2080, 23 L.Ed.2d at 668.

11. *Id.* at 725, 89 S.Ct. at 2080, 23 L.Ed.2d at 669.

12. *Id.* at 726, 89 S.Ct. at 2081, 23 L.Ed. 2d at 670 (emphasis added) ; *accord,* Henderson v. United States, 446 F.2d 557 (5th Cir. 1971).

13. 395 U.S. at 726, 89 S.Ct. at 2081, 23 L.Ed.2d at 670; accord, Barnes v. United States, 136 U.S.App.D.C. 171, 419 F.2d 753 (1969).

14. 398 U.S. 319, 90 S.Ct. 1730, 26 L.Ed. 2d 262 (1970).

15. *Id.* at 320, 90 S.Ct. at 1731, 26 L.Ed. 2d at 264.

As the district court recognized it is possible to conceive of circumstances where a jury might impose a harsher sentence upon retrial motivated by the type of vindictiveness denounced in *Pearce*. But a jury will normally be unaware of the prior trial, much less the sentence. Under the facts and circumstances presented in this case the likelihood of vindictiveness is so remote that we feel the burden must be upon the defendant to show that the jury acted out of vindictiveness in imposing an increased sentence. We have carefully studied the record and briefs in this case and find no evidence of vindictiveness.[16] There is nothing to suggest that the jury which sentenced Chaffin to life imprisonment did so because of a desire to punish him for appealing his case.[17]

We are not unmindful of the fact that the Fourth Circuit in Levine v. Peyton [18] had held *Pearce* to apply to jury sentencing. That circuit concluded that the Supreme Court in *Pearce* was concerned "that a defendant be freed of the apprehension of a harsher sentence after retrial," and upon that basis decided that jury sentencing does not provide the requisite freedom. While the *Pearce* court was concerned with the apprehensions of the defendant, we think it limited its concern to fears of a retaliatory motivation. The Fourth Circuit has, in our view, extended *Pearce* beyond the rationale upon which it was decided.

We note in conclusion that the result we now reach is in accord with this court's decision in Salisbury v. Grimes,[19] a pre-*Pearce* case. In *Salisbury* the court held that the imposition of a greater sentence by a Georgia jury upon retrial violated no constitutional principles.

In our view, it would be wholly incongruous, and without Constitutional foundation, to hold that a state is forever bound by and may not increase a jury imposed sentence but that the de-

16. In Kansas City v. Henderson, 468 S.W. 2d 48 (Mo.Sup.Ct.1971) the Missouri Supreme Court, in dealing with the principles enunciated in *Pearce* stated:

> Such considerations cannot possibly be applicable in a case wherein the punishment is assessed by the jury at the time it determines guilt at the second trial. It is not permissible for that jury to even be informed that the defendant was convicted previously on the same charge, and necessarily it may not be informed as to what sentence was received at the prior trial. It would constitute reversible error to introduce such testimony before the jury. Furthermore, such a jury in a one-step trial would not have before it evidence of things occurring between the first and second trial or other evidence relative to whether there ought to be greater punishment than that imposed at the first trial. These things would not be competent evidence for a jury determining guilt of the offense charged. Consequently, the jury in the second trial exercises its judgment as to the punishment to assess solely upon the evidence introduced at the second trial and the court's instructions. Necessarily, it does not in any way measure that punishment by what was done at the first trial. The punishment imposed by the jury in the second trial cannot be for the purpose of imposing a heavier sentence and thereby punishing the defendant for having been successful in getting his original conviction set aside.

468 S.W.2d at 52–53.

17. In his supplemental brief on appeal Chaffin does attempt to show vindictiveness by listing other defendants who have received lesser sentences than he for robbery convictions in the same state court. These statistics are not verified and even if they were, we think they are of no help to Chaffin. The mere fact of variances in length of sentences awarded separate defendants in unrelated trials is no indication of vindictiveness. *Cf.* Howard v. Fleming, 191 U.S. 126, 24 S.Ct. 49, 48 L.Ed. 121 (1903); Earin v. Beto, 453 F.2d 376 (5th Cir. 1971).

18. Levine v. Peyton, 444 F.2d 525 (4th Cir. 1971), cert. denied Slayton v. Levine, 404 U.S. 995, 92 S.Ct. 536, 30 L.Ed. 2d 547 (1971); *accord,* Pinkard v. Neil, 311 F.Supp. 711 (M.D.Tenn.1970).

19. 406 F.2d 50 (5th Cir. 1969). Due to subsequent developments the case was remanded with instructions to dismiss as moot in an unreported en banc order dated October 8, 1970.

fendant may nevertheless shoot for its reduction with a guarantee in advance that the next jury cannot increase the penalty, although acting on the evidence it has heard and entirely free of any knowledge from which it might impose punishment for taking the appeal.[20]

We find no conflict between the *Salisbury* rationale and that set forth in *Pearce*. Various state courts and at least one federal district court are in accord [21] with our conclusion.

Judgment affirmed.

---

20. *Id.* at 52.

21. Britt v. Tollett, 315 F.Supp. 401 (E.D. Tenn.1970); State v. Miller, 231 So.2d 260 (Dist.Co.App.Fla.1970); Salisbury v. Grimes, 223 Ga. 775, 158 S.E.2d 412

(1967); Bruce v. Commonwealth, 465 S.W.2d 60 (Ky.Ct.App.1971); Kansas City v. Henderson, 468 S.W.2d 48 (Mo. 1971); Branch v. State, 445 S.W.2d 756 (Tex.Cr.App.1969) (on rehearing).