## 47563.  BOLICK v. THE STATE.

CLARK, Judge. "Jailhouse lawyer" may be a pejorative term applied by some with derision but not by judges who know these penitentiary paracletes present frequently imaginative and innovative ideas. Gideon v. Wainwright, 372 U. S. 335 (83 SC 792, 9 LE2d 799, 93 ALR2d 733), was the result of a prisoner's product. Incarceration may provide the needed hours of idleness for contemplation which would be confirmation of the views expressed by famed New York City Attorney Morris Ernst who wrote in 58 Am. Bar Assn. Journal 165 (Feb. 1972) that "It is now apparent from vast studies that man's mind leaps higher and better when relaxed. I am persuaded that man is least inventive when he is waiting for a mess of telephone calls or watching a clock. Most of us get our good ideas falling asleep, waking up, lolling in a hot bath, driving a car along a known route or sitting on a toilet."

Such prefatory views arise from the ingenious legalisms expounded in the enumerations of error and written brief prepared here by a fellow inmate of the accused. This

followed the declination of his court appointed attorney to pursue an appeal after defendant had been convicted and given the statutory minimum sentence of one year for the crime of escaping from the Macon County Public Works Camp where he was serving a sentence imposed from another jurisdiction for burglary. His defense was his sworn testimony of lack of wilfulness in that he did not intend to escape but walked through an unlocked kitchen door with the purpose of going to the residence of a friendly guard to ask his intervention to arrange a removal from a large dormitory occupied by 30 convicts to a smaller section having 10 prisoners or to another place of detention.[1] His excuse for his behavior was fear of other prisoners arising from their threats. In rebuttal to such alleged lack of criminal intent the State proved that when apprehended 1½ miles away some 3 to 4 hours after departure from durance vile he was wearing the warden's pants and shirt, without removal of the name tag, coupled with testimony from a fellow prisoner concerning defendant's discussions with him about escape plans.

Appellant's advocate urges four grounds of error, three being (a) insufficient time to appoint counsel for trial preparation, (b) not furnishing adequate and effective counsel for the trial and (c) failure to provide "counsel for this appeal and other necessary legal aids needed by the indigent and pauperis prisoner to guarantee his constitutional rights."

The remaining enumeration of error deserves to be quoted in full: "The State in this above case placed the responsi-

---

[1]Georgia's prison reform program is making progress. The accused was transferred to the Reidsville penitentiary where he is studying a high school equivalency and automotive trade program with the result that he testified: "They've really got a good program for prisoners down there [at Reidsville] to help them and I really am proud that I've gót there." (T., p. 26)

bility for security squarely on this indigent inmate, where security is the sole responsibility of a State and the agents thereof, and by doing so has created and caused civil damages, irreparable damages, on this indigent prisoner by their negligence and/or malfeasance in maintaining security at the level that would be required by law, as it is clearly recorded that there was no force and no arms and/or weapons, and no damage to any State or private property, and the records show that no crime was committed, not even a misdemeanor, other than the escape charge, by this indigent; the court erred by not considering the above stated and dismissing the charge of escape, where there was no escape, just a home sick indigent desiring and wandering into freedom which is so precious a heritage of all Americans, to seek without force what we all desire, cherish and demand, certainly cannot be a crime to pursue the guarantees that the Constitution was based on as a whole freedom for all men. It is sincerely believed that to dangle this morsel of freedom before the indigent and not expect him to have the American desire is squarely a violation of the 8th Amendment of the Constitution of the United States, cruel and unusual punishment, inflicted in a torturous way, by punishing for having an American desire for freedom and seeking in a peaceful way what is guaranteed to all in this beloved free land of the United States of America."

1. Appointed trial counsel himself raised the question of insufficient time for preparation, which he based upon this being his fifth court-appointed assignment during the term. In support of his motion the attorney argued this lack of time prevented him from interviewing the fellow prisoner subpoenaed by him at his client's direction whom he did not use after learning he was adverse but who was put on the stand by the State for rebuttal. Since he had brought this adverse witness into court at the direction of his client, it is clear the accused brought about his own undoing and not lack of time for prepara-

tion. Furthermore, as the trial judge noted, the designation of counsel had been made six days in advance and the simplicity of the case did not warrant a postponement. This being a matter of discretion which was manifestly not abused, this contention is without merit. "Mere shortness of time, however, does not ipso facto show a denial of the rights of an accused. Something more is required." *Carnes v. State*, 115 Ga. App. 387, 388 (154 SE2d 781) cert. den., 389 U. S. 928 (88 SC 287, 19 LE2d 279). See also *Smith v. State*, 126 Ga. App. 547 (191 SE2d 304) and cits.

2. The complaint of court-appointed counsel being inadequate and ineffective is contradicted completely by the transcript of the trial. It shows defense counsel skilfully presenting every available objection with the trial judge scrupulously protecting the rights of the accused. In fact, the district attorney's handling was clearly aimed to make a fair and unbiased trial certain for the accused. It should be noted that appointed counsel was from the county in which the trial was held and the jury's verdict of the minimum sentence plus a recommendation for misdemeanor punishment constituted a vindication of the attorney's efforts in behalf of his client. "Where counsel, representing a defendant in a criminal case, is a member of the bar in good standing, and, in representing his client in the trial of his case, gives his complete loyalty to his client, serves him in good faith to the best of his ability, and his service is of such a character as to preserve the essential integrity of the proceedings in a court of justice, the requirements of due process within the Fourteenth Amendment of the Federal Constitution and Art. 1, Sec. 1, Par. 3 of the Constitution of Georgia are met." *Hill v. Balkcom*, 213 Ga. 58 (1) (96 SE2d 589). See also *Hart v. State*, 227 Ga. 171, 176 (179 SE2d 346) and *Heard v. State*, 126 Ga. App. 62 (189 SE2d 895).

3. This court does not consider the constitutional requirements to require an appeal in every criminal case. "A sentence is not necessarily void where counsel for one convicted of crime declines to appeal his case though

requested by his client to do so." *Balkcom v. Roberts,* 221 Ga. 339 (1) (144 SE2d 524). As was said by our Supreme Court in that case at p. 343, "[W]e are unwilling to substitute our judgment for that of his counsel who heard the evidence against him and observed the conduct of his trial." Moreover, it should be noted defendant received the minimum of one year rather than a greater sentence permissible by statute up to five years. *Code Ann.* § 26-2501. If there were a second trial a harsher sentence might well be the result and has been ruled permissible as not constituting double jeopardy. *Salisbury v. Grimes,* 223 Ga. 776 (158 SE2d 412); Salisbury v. Grimes, 406 F2d 50; *Rozier v. State,* 126 Ga. App. 336 (190 SE2d 627). See also North Carolina v. Pearce, 395 U. S. 711 (89 SC 2072, 23 LE2d 656).

4. Although we consider innovative the contention that accused was subjected to cruel and inhumane punishment in violation of the Eighth Amendment by imprisonment resulting from his having been unable to withstand the temptation of the unlocked kitchen door and because no force was used in his taking French leave, we see no legal merit in this contention.

5. The case was one in which the credibility of the accused was in issue and decided against him by the jury. His present appeal is reminiscent of the baseball plaint "we wuz robbed." Such analogy to our national pastime causes this court to comment: in baseball parlance, his attempt to reach home base failed and his squawk to this court in the position of umpire that "They ain't playing fair!" fails because the game was conducted in conformity with the rules.

*Judgment affirmed. Eberhardt, P. J., and Deen, J., concur.*

SUBMITTED OCTOBER 5, 1972—DECIDED OCTOBER 19, 1972—REHEARING DENIED NOVEMBER 15, 1972.

Wiley H. Bolick, *pro se, Carl P. Savage, Jr.,* for appellant.

*Claude N. Morris, District Attorney,* for appellee.

## On Motion for Rehearing.

CLARK, Judge. Following rendition of the foregoing opinion we received a document entitled "Reply Brief for Appellant." As we had already considered all of the points raised therein our customary practice would be merely to enter the customary "Rehearing denied" with no further explanation. Since, however, we have become aware of the results of "creative loafing" and are impressed that the brief cites eight United States Supreme Court cases on one point alone, we deem it proper to deal with only one assertion. This is that the indigent defendant was entitled to have appointed counsel continue his services after trial through consummation of this appeal. Our efforts are in accord with the theme of the excellent article entitled "Habeas Corpus" by the beloved and venerable Hon. Frank A. Hooper, Senior U. S. District Judge of the Northern District of Georgia, published in the August 1972 issue of the Georgia State Bar Journal (9 Ga. State Bar Jour. 29) urging a spirit of comity between State and Federal judges in order to reduce the large number of habeas corpus petitions which he says "is one of the principal sources of chaos, confusion and congestion in the courts."

Appellant now claims he did not have the benefit of effective representation on this appeal in that his appointed counsel declined to participate. In support of this contention he cites Anders v. California, 386 U. S. 738 (87 SC 1396, 18 LE2d 493). It was there held that the constitutional right to counsel is not satisfied where an indigent petitioner seeking initial review of his conviction has an amicus curiae rather than an active advocate. The procedure there suggested at p. 744 is that "if counsel finds a case to be wholly frivolous after a conscientious examination of it, he should so advise the court and request permission to withdraw. That request must, however, be accompanied by a brief referring to anything in the record that might arguably support the appeal. A copy of counsel's brief should be furnished the indigent and time allowed him to raise any points that he chooses; the court—not counsel—then pro-

ceeds, after a full examination of all the proceedings, to decide whether the case is wholly frivolous." Our Supreme Court has recently approved this procedure in *Chambers v. State,* 229 Ga. 648.

Although in the case now under consideration appointed counsel wrote this court, he did not submit citations or argument. Nevertheless, we are of the opinion that constitutional requirements have here been satisfied as this appellate court has carefully reviewed the transcript of the trial and given full consideration to all legal points that might be involved.

It should be noted that the charge against the accused was not a complex or involved crime that would require extensive research. His defense against the charge of escape from a place of detention was based on his credibility in explanation as to intent. Did the jury believe that in fact he did not intend to escape? The finding of the jury was adverse to his contentions and the evidence supports the verdict which has been approved by the trial judge. Our review of the transcript shows his right to a constitutionally fair trial including representation by competent counsel existed.

Our Supreme Court has wisely ruled that the advisability of appealing a judgment of conviction is for determination by counsel. *Buxton v. Brown,* 222 Ga. 564 (150 SE2d 636) and *Blackmon v. Smith,* 226 Ga. 849 (178 SE2d 176). A primary reason for this rule revolves around the possibility that upon a re-trial a harsher sentence might result. In *Rozier v. State,* 126 Ga. App. 336 (2) (190 SE2d 627) we held that "imposition of a harsher sentence by a jury on a retrial after an appeal does not violate defendant's constitutional rights." Since that decision the United States Supreme Court ruled in Colten v. Kentucky, 407 U. S. 104 (92 SC 1953, 32 LE2d 584) that upon a de novo trial there is a completely fresh determination of guilt or innocence which distinguishes such procedure from Pearce v. North Carolina, 395 U. S. 711 (89 SC 2072, 23 LE2d 656).

Thus, it was in order for appointed counsel in the case at

bar to decline to have defendant take such risk after his representation brought a minimum sentence with the jury recommending punishment as for a misdemeanor. It is then in the judge's discretion as to whether he will approve such recommendation and his action thereon is final. *Harris v. State,* 216 Ga. 740 (119 SE2d 352) and citations therein. "'Lawyers are not required to be infallible . . . The ability and faithfulness of an attorney is not to be judged by whether he won or lost the verdict.'" *Hart v. State,* 227 Ga. 171, 177 (179 SE2d 346) quoting Williams v. Beto (CCA 5), 354 F2d 698, 704, and Odom v. United States (CCA 5), 377 F2d 853. See also *Heard v. State,* 126 Ga. App. 62 (189 SE2d 895).

The remaining arguments in the brief are only repetitious of the original contentions which have already been fully considered and dealt with adversely to appellant.

*Judgment adhered to. Eberhardt, P. J., and Deen, J., concur.*